UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LARRY DWAYNE DIGGS,

    Defendant.
_____/

File No. 1:15-CR-166

HON. JANET T. NEFF

## **OPINION**

Before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255,[1] filed by Defendant Larry Dwayne Diggs (ECF No. 111). The Government has filed a response to the motion (ECF No. 113), and Defendant has filed a reply (ECF No. 118). Also before the Court is Defendant's motion to expand the record. (ECF No. 119.) For the reasons herein, the motion to expand the record will be granted, but the motion under § 2255 will be denied.

### **I. Background**

In the early morning hours of July 2, 2015, Defendant drove a black Chevy Impala bearing a license plate that read "TUNISIA" to a gas station in Muskegon, Michigan. He brought with him 5 grams of crack cocaine to sell to customers and a stolen .40 caliber pistol. (*See* Plea Agreement, ECF No. 48; Presentence Investigation Report, ECF No. 77.) There was a passenger

---

[1] Defendant also cites 28 U.S.C. § 2201, but that act "cannot be used as a substitute for appeal, habeas corpus, coram nobis or other procedures . . . [for] seeking release from prison." *Forsythe v. Ohio*, 333 F.2d 678, 679 (6th Cir. 1964). The proper vehicle for challenging Defendant's conviction and sentence is 28 U.S.C. § 2255, not the Declaratory Judgment Act. *See United States v. Burchett*, No. 93-5734, 1993 WL 473698, at *1 (6th Cir. Nov. 16, 1993) (noting that "the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202, does not serve as a basis for federal question jurisdiction as the Act only creates a remedy and is not an independent basis for jurisdiction").

with him in the vehicle. Someone called the police to report suspected drug activity at the gas station. When the police arrived, Defendant fled on foot, leaving behind the vehicle, the cocaine, and the handgun.

The vehicle belonged to Defendant's girlfriend, Tunisia Phillips-Lark. After the police arrested Defendant, he spoke with his girlfriend several times over the telephone at the jail. He instructed her to provide false testimony to the grand jury so that she would not implicate herself or him. He told her to claim that her car had been stolen. They also spoke about their involvement in drug trafficking, and he instructed her to recover drug proceeds and to dispose of drugs that he had stashed in her home. In addition, they made plans to discourage the passenger in the Chevy Impala from implicating Defendant. These telephone calls were recorded.

Phillips-Lark followed Defendant's instructions. Among other things, when she testified before the grand jury on August 11, 2015, she denied allowing Defendant to borrow her car, and she denied speaking to him since his arrest.

In September 2015, the grand jury returned an indictment charging Defendant with being a felon in possession of a firearm and ammunition (Count 1), possession of a controlled substance with intent to distribute (Count 2), and using and carrying a firearm during and in relation to a drug trafficking crime (Count 3). (Indictment, ECF No. 1.)

The following month, the Government offered Defendant a plea deal. He could plead guilty to Counts 2 and 3 in exchange for the dismissal of Count 1. (*See* Unsigned Plea Agreement, ECF No. 111-1.) In addition, the Government agreed to not oppose a request for a reduction in Defendant's offense level under the Sentencing Guidelines for acceptance of responsibility. The offer indicated that it would expire on October 16, 2015. (*Id.*, PageID.471.)

Defendant contends that his attorney did not disclose this plea offer to him until Friday, November 20, 2015, when he visited Defendant at the county jail. Defendant asked to look over the agreement, consider it, and then contact his attorney the following Monday. Meanwhile, the Court unsealed a superseding indictment with an additional defendant (Defendant's girlfriend) and two additional charges against Defendant. (Superseding Indictment, ECF No. 21.) Counts 1-3 of the superseding indictment were the same as Counts 1-3 of the original indictment, but Count 4 of the superseding indictment alleged that Defendant had engaged in witness tampering in July and August 2015 by attempting to influence or prevent the grand jury testimony of his girlfriend, and Count 9 charged Defendant and his girlfriend with conspiracy to witness tamper.

Defendant received the superseding indictment the following Monday and spoke with his attorney on the phone. His attorney told him that the original plea offer was no longer available.

Two months later, Defendant agreed to plead guilty to Counts 2-4 of the superseding indictment in exchange for the dismissal of the other charges against him. The Plea Agreement he signed is virtually identical to the first plea offer he received, except for the addition of Count 4 and the mention of Defendant's new charges for witness tampering and conspiring to tamper with a witness. (*See* Plea Agreement, ECF No. 48.) Defendant entered his plea on February 4, 2016, before United States District Judge Robert Holmes Bell.

The Presentence Investigation Report (PIR) grouped Counts 2 and 4 together and calculated a sentence range of 33 to 41 months for those counts, as well as a consecutive sentence of 60 months for Count 3. (PIR, ECF No. 77, PageID.304.) The calculation for Counts 2 and 4 was based on a total offense level of 18 and a criminal history score of III. (*Id.*) The calculation

for Count 3 was based on the statutory minimum sentence for that offense. (*Id.*) Judge Bell accepted those calculations and sentenced Defendant on June 6, 2016, to 36 months of imprisonment for Counts 2 and 4, and a consecutive 60 months for Count 3, for a total term of 96 months.

Defendant appealed his conviction, arguing that his attorney was ineffective for failing to timely convey the first plea offer to him. The Court of Appeals declined to consider the claim because the record was insufficient to evaluate prejudice. (*See* 6th Cir. Order, ECF No. 108.)[2]

Defendant now raises the following grounds for relief in his § 2255 motion:

I. Counsel failed to timely convey the plea offer.

II. Counsel failed to move for a downward departure under § 5G1.3(b)(1) of the Sentencing Guidelines.

III. Counsel failed to adequately investigate facts and prepare for sentencing or object to sentencing enhancements.

IV. The prosecutor engaged in misconduct by presenting improper evidence, and failing to present other evidence, to the grand jury.

(*See* § 2255 Motion, ECF No.111, PageID.456.)

## II. Standards

**A. Merits**

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255.

---

[2] The Court of Appeals did not have access to the first plea offer, as neither party presented it to that court. Defendant's appellate attorney told the Court of Appeals that "There is no Record of the contents of this Plea Offer, therefore, the plea offer document cannot be referenced or viewed." (Appellant's Br. 2, Document 19, *United States v. Diggs*, No. 16-1792 (6th Cir.)).

4

To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A defendant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

### B. Evidentiary Hearing

The court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

### III. Analysis

### A. Failure to timely convey plea offer

Defendant claims that his attorney provided ineffective assistance because he failed to convey the first plea offer to Defendant in a timely fashion, thereby exposing him to a conviction for witness tampering, an additional special assessment fee, and a longer term of confinement. Defendant's claim is consistent with concerns that he raised at his plea hearing:

>DEFENDANT DIGGS: I just feel like there could have been better communication between me and [my attorney], and like 'cause I been ready to take responsibility for my situation or whatever, and I wish that was -- the first plea agreement that the government came to me with, I wish it was presented to me earlier than it was and maybe I could have been pleaded out because I was already ready to take responsibility and move on with my life.
>
>\*\*\*
>
>It was just like when the government came to me with the first plea agreement, I understand [my attorney] had a few health issues or whatever and was in the hospital, so I know that could have added on with having so many other clients. When he told me about the plea agreement, when I read over the plea agreement, it was like probably like a month and a half after the government already had sent the plea agreement to me. And once I read it, I made a few suggestions to see if he can get something on my behalf in the plea agreement, and he agreed to do so. By the time he -- when he went to try to do so, they had already -- I got some mail like three days later and my indictment was superseded and the plea agreement was off the table.

(Plea Hr'g Tr. 4-6, ECF No. 102.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

6

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

In *Missouri v. Frye*, 566 U.S. 134 (2012), the Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 145. "When defense counsel allow[s] the offer to expire without advising the defendant or allowing him to consider it, defense counsel [does] not render the effective assistance the Constitution requires." *Id.*

If counsel does not communicate a plea offer before it lapses, the defendant must show prejudice by demonstrating a reasonable probability of the following: (1) defendant "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel"; (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion"; and (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147.

If Defendant's attorney did not convey the first plea offer until after it expired, Defendant has a strong case that his attorney performed deficiently. However, Defendant has not shown that he suffered prejudice from that deficiency. He cannot show that there is a reasonable probability that end result would have been more favorable to him if he had received and accepted the first plea offer. The first and second plea offers are the same, except for the addition of Count 4, which did not exist until after the first plea offer expired. The first plea offer did not promise that Defendant would be immune from any and all additional charges. It promised no further prosecution for "conduct associated with his possession of a firearm and controlled substances on July 2, 2015," but it expressly reserved the right to prosecute Defendant for "any other unlawful

7

past conduct or any unlawful conduct that occurs after the date of this agreement." (Unsigned Plea Agreement, ECF No. 111-1, PageID.466.) Defendant's witness-tampering conduct was not "associated with" his possession of a firearm and controlled substances on July 2, 2015. It was separate conduct, occurring after he was arrested for those offenses. Thus, even if Defendant had been able to accept the first plea offer, he still would have been vulnerable to prosecution for witness tampering.

Defendant apparently believes that the Government would have closed the case against him and ignored his witness tampering if he had accepted the first plea offer, but that is wishful thinking. Nothing would have prevented the government from pursuing additional charges against Defendant and his girlfriend based on the evidence in the recorded telephone conversations. Indeed, at this point, it is hard to imagine that they would simply ignore that conduct. Consider what would happen if the Court were to grant relief on Defendant's claim. In *Lafler v. Cooper*, 566 U.S. 156 (2012), another case in which the defendant missed an opportunity to accept a plea offer, the Supreme Court suggested that the proper remedy "may be to require the prosecution to reoffer the plea proposal." *Id.* at 171. After all, the purpose of the remedy is to "'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant[.]" *Id.* at 170.

Applying the logic of *Lafler* to the facts of this case, the most appropriate remedy for a constitutional violation caused by Defendant's attorney's failure to timely convey the original plea offer would be to vacate the plea and judgment of conviction and then require the Government to reoffer its original plea proposal. But if the Government did so, is there any doubt about what it would do next? The Government would likely pursue its witness-tampering charges against Defendant and he would be in no better position than he was before he accepted the second plea

8

offer. In fact, he might be worse off because the Government would not be required to extend a plea offer for the witness-tampering charges and Defendant would either be forced to plead guilty to those two charges without a plea agreement or to face a jury trial in which the evidence against him is contained in recorded telephone conversations. Thus, there is no reason to believe that Defendant would have been better off if his attorney had conveyed the first plea offer to him in a timely manner.

### B. Failure to move for downward departure

Defendant faults his counsel for not moving for a downward departure under § 5G1.3(b)(1) of the Sentencing Guidelines. He contends that he was a pretrial detainee for 10 months and 13 days, and that his attorney's failure to request the downward departure resulted in "at least an additional 10 months and 13 days of imprisonment[.]" (§ 2255 Motion, ECF No. 111, PageID.453-454.) He contends that he is entitled to credit against his sentence for his pretrial detention, but the Bureau of Prisons (BOP) has determined that he is not entitled to such credit.

#### 1. Downward departure under § 5G1.3(b)

Section 5G1.3(b) provides that if

> a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
> > (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
> >
> > (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b) (Nov. 1, 2015).

9

Section 5G1.3(b) does not apply. It is not clear how Defendant arrived at his calculation of 10 months and 13 days, but it is clear that he is referring some part of his pretrial detention. However, no part of that detention was based on an "undischarged term of imprisonment" resulting from "another offense that is relevant conduct to the instant offense of conviction."

According to the PIR, in 2012, Defendant was convicted in a Michigan state court of assault with a dangerous weapon and use of a firearm during the commission of a felony ("felony-firearm") after he fired a gun near some individuals at a beach in Muskegon, Michigan. (PIR, PageID.297.) He received a sentence of 4 months to 4 years in prison for the assault conviction, followed by a consecutive 2-year sentence for the felony-firearm conviction. (*Id.*) In 2013, he was released on parole. (Michigan Department of Corrections Offender Movement Report, ECF No. 119-1, PageID.577.) In July 2015, witnesses to an armed robbery identified Defendant as the perpetrator and the authorities charged Defendant with armed robbery and violating his parole. (PIR, PageID.298.) Michigan authorities arrested him for the parole violation on July 25, 2015. (*Id*.) In September 2015, when the indictment and arrest warrant issued in the instant case, he was in the custody of the Michigan Department of Corrections. (*See* Pet. for Writ of Habeas Corpus Ad Prosequendum, ECF No. 4, PageID.8.)

The United States Marshals Service took custody over Defendant on September 22, 2015. A few days later, he waived his right to a detention hearing. (ECF No. 10.) He contends that the Marshals Service returned him to state custody on June 10, 2016 (a few days after the judgment of sentence), and then took custody over him again on December 28, 2016, so that he could begin serving his federal sentence. According to Defendant, the state dismissed the charges against him that led to his arrest. (§ 2255 Motion, PageID.454.) According to his profile in

Michigan's Offender Tracking Information System, he finished serving his state sentences for the assault and felony-firearm convictions on June 2, 2017.[3]

Neither the imprisonment resulting from the assault offense, nor the detention resulting from the armed robbery/parole violation, nor the pretrial detention resulting from the charges in the instant case meet the terms of § 5G1.3(b). The assault offense, which occurred in 2012, is not related to the offense for which he was convicted in this Court. Likewise, the armed robbery had nothing to do with his federal offense. Moreover, the armed robbery did not result in an "undischarged term of imprisonment" because, according to Defendant, the state dismissed that charge. Finally, the period of time that Defendant was in federal custody awaiting judgment on his federal conviction was not the result of "another" offense. Accordingly, because U.S.S.G. § 5G1.3(b) did not apply, Defendant's attorney was not ineffective for failing to request a downward departure under that section.

**2. Jail credit**

Even if § 5G1.3(b) does not apply, Defendant apparently believes that he is entitled to jail credit anyway. At his sentencing hearing, Defendant asked the Court whether he would be credited for the time he had been detained in jail. Judge Bell responded, "Yes, yes. It will be credited. I have no idea how much it is, but it will be credited . . . those days, weeks, months will be credited against this sentence." (Sentencing Hr'g Tr. 17.) Defendant claims that his attorney said nothing at the time. The Bureau of Prisons (BOP) has since informed him that he is not eligible to receive jail credit under 18 U.S.C. § 3585(b).

Defendant does not state an ineffective-assistance claim because he does not allege anything that his attorney could have done to change the outcome in his case. As the Supreme

---

[3] *See* http://mdocweb.state mi.us/OTIS2/otis2profile.aspx?mdocNumber=829074 (visited Oct. 21, 2019).

Court has made clear, "§ 3585(b) does not authorize a district court to compute the credit at sentencing." *United States v. Wilson*, 503 U.S. 329, 334 (1992). "The BOP, not the sentencing court, computes federal prisoners' credit for prior time served." *Barker v. Barhart*, No. 18-5969, 2019 WL 4391453, at *3 (6th Cir. June 4, 2019). If the Court did not have authority to calculate the sentencing credit, there is nothing his attorney could have done at or before the sentencing hearing to impact that calculation. Thus, Defendant's attorney was not ineffective.

It is possible that the BOP determined that Defendant was not entitled to any credit because the time that he spent in federal custody was credited against his state sentence. "[A] prisoner may receive credit toward a federal sentence only if the time in question has not been credited against another sentence." *Barker*, 2019 WL 4391453, at *3. If Defendant believes that the BOP made the wrong determination, the proper remedy is a petition under 28 U.S.C. § 2241, after he has exhausted his administrative remedies. *See id.*

### C. Failure to investigate and prepare for Defendant's case

Defendant also contends that his attorney failed to adequately investigate and prepare for his case. Specifically, Defendant's attorney failed to investigate the witness identification by the police, failed to contest the quantity of drugs discovered in Defendant's possession, failed to retain an expert who could have testified that three grams of cocaine was not enough for drug trafficking, and failed to investigate the possession of the firearm.

In addition, Defendant claims that his attorney failed to investigate matters pertaining to sentencing. For instance, if he had investigated the pregnancy of Defendant's girlfriend, he could have objected to an enhancement under the Sentencing Guidelines based on the fact that Defendant used a pregnant woman in a drug trafficking crime. In addition, Defendant's attorney failed to object to a "leadership role" enhancement. (§ 2255 Motion, PageID.455.)

12

### 1. Investigation of facts relating to guilt

To the extent Defendant challenges his attorney's failure to investigate the facts supporting Defendant's guilt (including the witness identification, the drug quantity, and the possession of the firearm), his claim is barred by his plea. It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989). As the United States Supreme Court has explained,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the validity of the plea. *See Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001)).

Defendant's assertion that counsel failed to investigate facts regarding the quantity of drugs, the witness identification, or his possession of the pistol does not undermine the voluntary and intelligent nature of his plea. Defendant was aware of his right to challenge the evidence against him, but he knowingly waived that right. (*See* Plea Hr'g Tr. 9, ECF No. 102.) In doing so, he waived the right to have an attorney or expert investigate and challenge the accuracy and reliability of that evidence.

Even if Defendant's claim that his counsel was ineffective for failing to investigate the foregoing evidence was not waived, it lacks merit. Defendant provides no support for his assertion that the witness identification was unreliable, that he possessed less than 3 grams of crack cocaine, that an expert could have testified that 3 grams of crack cocaine was not enough for distribution, or that he did not possess the pistol that was found in the vehicle he was driving. His assertion that counsel performed deficiently is wholly conclusory.

In addition, Defendant does not contend that the outcome of the proceedings would have been different. Because Defendant's conviction is based on a guilty plea, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Defendant does not allege, let alone show, that he would have insisted on going to trial if his attorney had investigated the foregoing issues. To the contrary, he claims that, at his "first attorney-client consultation," he informed his attorney that "he wanted to plea out as quickly as possible." (§ 2255 Motion, PageID.452.) Thus, he does not meet the requirements for an ineffective-assistance claim under *Strickland* and *Hill*.

**2. Investigation of facts relating to sentence**

Following the recommendation in the PIR, the Court applied a two-level enhancement under § 2D1.1(b)(15) of the Sentencing Guidelines because Defendant "knowingly involved" his girlfriend, who was pregnant at the time, in a drug offense and because Defendant engaged in "witness tampering and obstruction of justice." (PIR, PageID.295.) Section 2D1.1(b)(15) provides for a two-level enhancement if the defendant knowingly involved a pregnant woman in a drug offense, *or* if the defendant "engaged in witness intimidation, tampered with or destroyed evidence, or otherwise obstructed justice in connection with the investigation or prosecution of the offense[.]" *Id.*

14

Defendant contends, without support, that his girlfriend was not pregnant at the time of his offense. Even if he is correct, however, he would not state a claim because the result would have been the same had his attorney successfully established that his girlfriend was not pregnant. He would have received the same two-level enhancement because he engaged in witness tampering. Thus, he cannot show prejudice as a result of his attorney's failure to investigate the pregnancy of his girlfriend.

The Court also applied a three-level enhancement under U.S.S.G. § 3B1.1 because Defendant "was an organizer, leader, manager or supervisor in any criminal activity that involved five or more participants." (PIR, PageID.295.) The PIR details Defendant's recorded telephone conversations with his girlfriend and others, in which he directed the distribution of drugs to, and the recovery of drug proceeds from, other individuals. (*See id.*, PageID.292-293.)

Defendant insists that the evidence supporting this enhancement was "insufficient," without specifying what objection his attorney should have raised. (*See* § 2255 Motion, PageID.455.) In his Reply, Defendant clarifies that there were "no more than three people" involved in the drug trafficking operation, implying that his attorney should have objected to the enhancement because the criminal activity did not involve five or more participants. (Diggs Decl., ECF No. 118-1, PageID.556.) However, Defendant does not contest the facts in the PIR, which describe the involvement of at least the following five individuals, in addition to Defendant: Defendant's girlfriend, who acted as Defendant's intermediary; "Diddy/Did It" and Handsome Parker ("HP"), who supplied drugs and/or sold Defendant's drugs to customers; "Nutboy," who sold drugs for Defendant; and an unidentified male individual, who gave Defendant's girlfriend drug money. (PIR, PageID.292-293.) Thus, Defendant's ineffective-assistance claim is unsupported.

For all the foregoing reasons, Defendant's ineffective-assistance claim is meritless.

**D. Prosecutorial misconduct**

Finally, Defendant contends that the prosecutor engaged in "prosecutorial misconduct," violating his right to due process and equal protection. (§ 2255 Motion, PageID.456.) This claim is based on Defendant's "belief" that the prosecutor presented evidence to the grand juries that the prosecutor knew would not be admissible at trial. (*Id.*) Defendant asserts that the prosecutor did not present prior inconsistent statements from two witnesses, and used summaries of testimony and evidence to avoid "unfavorable" testimony from a witness at the gas station. (*Id.*) Defendant also contends that there was no evidence that he intended to sell the drugs in his vehicle or that he possessed a weapon for the purpose of facilitating drug trafficking.

This claim is barred by Defendant's guilty plea. Claims barred by a guilty plea include "due process claims of prosecutorial misconduct unless it appears from the face of the indictment or record at the time the guilty plea was entered that the government lacked the power to prosecute." *United States v. Ayantayo*, 20 F. App'x 486, 488 (6th Cir. 2001) (citing *Broce*, 488 U.S. at 574-75). It does not appear that the government lacked the power to prosecute Defendant. Even Defendant concedes that, under existing law, the Government had jurisdiction to prosecute him. (Reply, PageID.548.) Thus, the prosecutor's alleged misconduct provides no basis for relief from the judgment of conviction and sentence.

**IV. Conclusion**

In summary, the Court will grant Defendant's motion to expand the record. After considering the expanded record, the Court finds that Defendant's claims are meritless. Moreover, an evidentiary hearing is not required because the record of the case conclusively shows that Defendant is not entitled to relief.

In his reply, Defendant raises a number of procedural objections to Plaintiff's response, many of which are premised on the false assumption that the Federal Rules of Civil Procedure govern these proceedings, including the rules governing an answer to a complaint, a motion to dismiss, and a motion for summary judgment. However, those rules are not applicable here. Defendant filed a *motion*, not a civil complaint. The Court ordered Plaintiff to file an "Answer" to the motion in accordance with Rule 5 of the Rules Governing § 2255 Proceedings, not an answer in accordance with the Federal Rules of Civil Procedure. (*See* 8/13/2018 Order, ECF No. 112.)

Defendant also contends that Plaintiff was required to furnish copies of all briefs or transcripts that it mentions in its response; however, the Rules Governing § 2255 Proceedings requires *the Court* to order the Government to provide those documents, if they are "not available in the court's records." Rule 5(c), Rules Governing § 2255 Proceedings. The documents cited by Plaintiff are available in the Court's records. Thus, the Court discerns no procedural error in Plaintiff's response. Accordingly, the motion under § 2255 will be denied.

Under 28 U.S.C. § 2253(c), the Court must determine whether to issue a certificate of appealability. A certificate should issue if the movant has demonstrated "a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved of issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Under *Slack*, to warrant a grant of the certificate, Defendant "must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484.

The Court has carefully considered the issues under the *Slack* standard and will grant a certificate of appealability as to Defendant's claim that he received ineffective assistance of counsel because his attorney failed to provide him with timely notice of the first plea offer. As to all other issues, reasonable jurists could not find that this Court's denial of Defendant's claims was debatable or wrong.

An order and judgment will enter consistent with this Opinion.


Dated:   October 24, 2019                    /s/ Janet T. Neff
                                             Janet T. Neff
                                             United States District Judge